IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JESSICA FROCK, o/b/o
L.F., a minor,

            Plaintiff,

vs.                          Case No. 12-1254-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

            Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying Jessica Frock supplemental security income payments for her child L.F. (hereinafter referred to as "plaintiff"). The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

(10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

**II. Legal standards for child disability**

The ALJ is required to apply a three-step analysis when making a determination of whether a child is disabled. In order to find that a child is disabled, the ALJ must determine, in this order, (1) that the child is not engaged in substantial

2

gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets, medically equals, or functionally equals a listed impairment. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); 20 C.F.R. § 416.924(a) (2012 at 858).

If a child has a severe impairment which does not meet or medically equal any listing, the ALJ must decide whether the severe impairment results in limitations that functionally equal the listings. By "functionally equal the listings," the agency means that the severe impairment must be of listing level severity, i.e., it must result in marked limitations in two domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains to be considered are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

### III. History of case

On August 12, 2011, administrative law judge (ALJ) John B. Langland issued his decision (R. at 12-25). Plaintiff was born on November 22, 2009 (R. at 15). Jessica Frock filed her application on behalf of her son on March 25, 2010 (R. at 12). At step one, the ALJ determined that plaintiff has not engaged

3

in substantial gainful activity since the application date (R. at 15). At step two, the ALJ found that plaintiff has the following severe impairments: left fibular hemilemia status post syme amputation and osteotomy of left ankle (R. at 15). At step three, the ALJ determined that plaintiff's impairments do not medically meet, equal or functionally equal a listed impairment (R. at 15-24). Therefore, the ALJ concluded that plaintiff has not been disabled since March 25, 2010, the application date (R. at 24).

**III. Did the ALJ err in finding that plaintiff's impairment did not meet or equal listed impairment 101.05B?**

Plaintiff was born on November 22, 2009 (R. at 15). Plaintiff was born with a deformed left leg. Plaintiff underwent a below-the-knee amputation of his left leg on September 21, 2010. Plaintiff received his first prosthesis on November 7, 2010 (Doc. 14 at 4-5, 10; Doc. 23 at 2). Plaintiff was 1 year and between 8 and 9 months old at the time of the ALJ decision on August 12, 2011.

Listed impairment 101.05B is as follows:

> *Amputation (due to any cause)…*
>
> B. One of both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 101.00B2b, which have lasted or are expected to last for at least 12 months.

4

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2013 at 537). § 101.00B2b is as follows:

> *b. What We Mean by Inability To Ambulate Effectively*
>
> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.,* an impairment that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities…

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2013 at 533).[2]

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "all" of the criteria of the listed impairment. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

The ALJ found that plaintiff's impairment did not meet or medically equal listed impairment 101.05B, stating that although

---

[2] The ALJ, in his decision, stated that the ability to ambulate effectively was set out in 1.00B2B (R. at 15), which is the section for adults, and not children. The court finds, on the facts of this case, that plaintiff has failed to establish that this error resulted in an adverse decision by the ALJ.

5

the record reveals that the plaintiff frequently discarded his prosthesis during the day, the records indicated that plaintiff is able to move about when the prosthesis is in use (R. at 15). At step three, plaintiff has the burden of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).

Defendant argues that there is no evidence of stump complications. The listed impairment requires a showing of "stump complications" resulting in medical inability to use a prosthetic device to ambulate effectively. In the case of Puckett v. Chater, 100 F.3d 730, 733 (10th Cir. 1996), the court stated that listing 1.10 "plainly requires stump complications, not problems with prosthetic fit." Problems with repairing or replacing a prosthesis do not fall within the scope of the listing. The court went on to state the following:

> …plaintiff must prove that he is unable to use a prosthesis effectively because of stump complications lasting for at least twelve months…
>
> At no time relevant to the disability determination was there any indication that plaintiff needed revisions to his stump…
>
> Dr. Allen's indication that plaintiff always will have stump problems, even with the best management, is not enough to establish an impairment meeting the listing. According

6

> to Dr. Allen, any stump problems are
> primarily due to an improper fit of the
> prosthesis…
>
> No medical records reflect a stump problem
> independent of the prosthesis fit or
> plaintiff's overuse of the prosthesis. *See
> …id.* at 234-35 (stump redness and irritation
> caused by poor fit and amount of work
> plaintiff was demanding of prosthesis).

100 F.3d at 733.

The only evidence cited by the plaintiff regarding the stump was a record from May 11, 2011 noting rub sores, and that red areas were noted after the prosthesis was on for about 15 minutes along the top ridge of the prosthesis (R. at 442). However, plaintiff does not cite to any evidence of stump complications. As in <u>Puckett</u>, in the case before the court, plaintiff does not cite to any evidence that plaintiff needed revisions to his stump; furthermore, plaintiff does not cite to any medical evidence reflecting a stump problem independent of the prosthesis fit. Plaintiff has failed to cite to medical evidence that plaintiff has stump complications, as required by listed impairment 101.05B. Plaintiff has therefore failed to provide medical evidence that his impairment meets all of the specified criteria of this listed impairment. Plaintiff has also failed to cite to any medical opinion evidence that plaintiff's impairment meets or equals this listed impairment. Therefore, there is no basis to remand this case for further

7

consideration of whether plaintiff's impairment meets or equals listed impairment 101.05B.  Cowen v. Astrue, Case No. 09-1205-SAC (D. Kan. July 21, 2010; Doc. 19 at 8-9); (no basis for remand regarding listed impairment 1.04A when plaintiff failed to point to any specific medical evidence regarding the requirement of nerve root compression); Levins v. Astrue, 2010 WL 1881452 at *6 (E.D. Wis. May 10, 2010)(same).

Listed impairment 101.05B further states that a claimant have stump complications resulting in an inability to use a prosthetic device to ambulate effectively, which is expected to last for 12 months.  According to PT (physical therapist) Theresa Merck, in a form dated May 10, 2011, plaintiff is not walking independently with the prosthesis, but walks with support, and is just starting to stand briefly without support.  As a result PT Merck opined that plaintiff has a "marked" impairment in his ability to move about and manipulate objects (R. at 328).  However, the most recent therapy record, dated June 1, 2011 from PT Merck, indicates that plaintiff is able to take 5 steps without support, and has good mobility, transitions, and climbs (R. at 445).  Plaintiff was approximately 1 year and 6 months old on June 1, 2011.

According to C.F.R. § 416.926a(j)(2)(ii), infants and toddlers from age 1 to age 3 should begin to walk and run without assistance, and climb with increasing skill.  Plaintiff

was first fitted with a prosthesis on November 7, 2010, and the ALJ decision was issued on August 12, 2011, while plaintiff was 1 year and between 8 and 9 months of age. According to the most recent therapy record on June 1, 2011, plaintiff is able to take 5 steps without support, has good mobility, transitions and climbs.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). Based on the most recent therapy record, and plaintiff's age at that time, the court finds that substantial evidence supports the ALJ's conclusion that plaintiff is able to move about when the prosthesis is in use, and can ambulate effectively. Furthermore, the court would note that plaintiff presented no medical opinion evidence that plaintiff's alleged inability to ambulate effectively has lasted or is expected to last for 12 months.

Plaintiff also argues that the court consider whether his condition at least equals the listed impairment. This argument is raised for the first time in plaintiff's reply brief (Doc. 24 at 4). First, arguments raised for the first time in a reply brief are waived and will not be considered by the court. Water-Pik, Inc. v. Med-Systems, Inc., __ F.3d ___, 2013 WL 4046470 at *21 n.8 (10th Cir. Aug. 12, 2013); Lynch v. Barrett, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013). Second, even if the court were to consider this argument, the determination of medical equivalence is to be based solely on medical findings. Puckett, 100 F.3d at 733. As in Puckett, the court finds that the medical evidence does not show that plaintiff's impairments equal listed impairment 101.05B. In summary, the court finds that substantial evidence supports the ALJ's finding that plaintiff's impairment does not meet or medically equal listed impairment 101.05B.

**IV. Did plaintiff have an "extreme" limitation in the domain of moving about and manipulating objects?**

The ALJ found that plaintiff only had "marked" limitation in this domain (R. at 22). Plaintiff argues that the evidence supports a finding that plaintiff has an "extreme" limitation in this domain. As noted above, a person with an extreme limitation in one domain functionally equals a listed impairment. A child will be considered to have an extreme

impairment in a domain when the child's impairment(s) interferes very seriously with his/her ability to independently initiate, sustain, or complete activities.  The child's day-to-day functioning may be very seriously limited when his/her impairment(s) limits only one activity or when the interactive and cumulative effects of his/her impairment(s) limit several activities.  Extreme limitation also means a limitation that is more than marked.  Extreme limitation is the rating given to the worst limitations.  However, extreme limitation does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3) (2013 at 882).

Dr. Timmerman opined that plaintiff had a "marked" impairment in the domain of moving about and manipulating objects (R. at 201).  Dr. Siemsen opined that plaintiff had a "less than marked" limitation in this domain (R. at 258).  PT Merck opined that plaintiff had a "marked" impairment in this domain (R. at 328).  Finally, Dr. Harrington, a treatment provider, opined that plaintiff had a "less than marked" limitation in this domain (R. at 435).  There is no medical opinion in the record indicating that plaintiff has an extreme limitation in this domain.  Substantial evidence clearly supports the ALJ's finding that plaintiff has a "marked" limitation in this domain.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 11th day of September, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge